IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| NATHAN HAYS,<br>Plaintiff,<br>vs.<br>COMMUNICATION TECHNOLOGIES, INC.,<br>Defendant. | **No. 4:09-cv-00277 – JEG**<br><br>**O R D E R** |

This matter comes before the Court on cross Motions for Summary Judgment filed by Plaintiff Nathan Hays (Hays) and Defendant Communication Technologies, Inc. (Comtek). A hearing on the motions was held on September 17, 2010. Attorney Charles Gribble represented Hays; and attorneys Deborah Tharnish, Terese Connolly, and John Michels represented Comtek. This matter is fully submitted and ready for disposition.

## I. SUMMARY OF MATERIAL FACTS

In 2005, Comtek, which provides the Army with Reserve Officer Training Corps (ROTC) instructors, employed Hays to fill an assistant professor of military science professor position in Iowa State University's (ISU) ROTC program. In late 2007, Hays was notified that his reserve unit was going to be mobilized. On December 11, 2007, Hays emailed Mayola Smith (Smith), Comtek's staff manager for employee support, and informed Comtek that Hays would be taking vacation and "then" a military leave of absence starting around February 10, 2008. Dep. Ex. 4. On December 18, 2007, Hays faxed a memo to his supervisor, Ray Rasmussen (Rasmussen), and Smith indicating that Hays' unit was mobilizing on February 10, 2008, and that his last day of work would be February 8, 2008. On December 20, 2007, Hays faxed Smith a cover sheet that stated, "Mae – my vacation request + my LOA request." Def.'s App. 96. Hays' fax included two leave request forms, one that indicated that he would be taking leave without pay to perform military service beginning on February 7, 2008, and returning sometime in April 2009, while the

second form indicated that Hays would be taking vacation with a begin leave date of January 16, 2008, and a return to work date of February 5, 2008.

On January 3, 2008, Hays spoke with Smith by telephone and then faxed her a leave request form with an accompanying cover sheet whereon Hays wrote, "[u]nit is putting IDT's (drill days) in front of AT – so now our NLT date moved up a week." Def.'s App. 64. The leave request form indicated that Hays' vacation dates would now start on January 8, 2008, and end on January 29, 2008. Hays provided Comtek with military service orders indicating that Hays' mobilization date was February 8, 2008.

Hays' mobilization was canceled as of February 7, 2008, due to his wife's illness. Hays returned home from military duty on Saturday, February 9, 2008, and did not contact Comtek immediately upon his return. On February 12 or 13, 2008, Lieutenant Colonel Lawrence Braue (Braue), Hays' supervisor at ISU, called Comtek to inform them that Hays had not mobilized with his unit.

On February 12 or 13, 2008, Smith called Hays and asked him to call Rasmussen. Hays called Rasmussen, and they "got[] into it" during the phone call.[1] Pl.'s Resp. App. 52 of 186. Both Hays and Rasmussen called Stephen Smith, Rasmussen's supervisor, to report the conversation, and Steven Smith told Hays that Hays needed to call Rasmussen back to correct the situation. Hays left a message for Rasmussen, but the two of them did not speak directly.

On February 15, 2008, Stephen Smith, on behalf of Comtek, sent Hays a termination letter that stated in part,

> I am informing you that your employment with Communication Technologies, Inc. has been terminated as of 15 February 2007 [sic]. I have been made aware that you departed Iowa State University to meet activation responsibilities and

[1] The parties dispute the details of the conversation; however, the parties agree that Hays used a vulgarity. Hays contends that he said, "What did I just fucking tell you, Ray?" while Rasmussen asserts that Hays said, "I just need some fucking time off." Def.'s App. 102, 103, Pl.'s Resp. App. 52 of 186.

> we later discovered that you had been released and had not contacted your employer in accordance with USSERA [sic] guidelines. Subsequent conversations between you and Ray Rasmussen resulted in your unprofessional and abusive remarks towards your respective manager. It is obvious employer/employee relationship is no longer workable.

Def.'s App. 82.

On February 10, 2008, Braue drafted a memo that outlined various deficiencies pertaining to Hays' job performance that were discovered while Hays was on leave and recommended Hays' dismissal. On February 20, 2008, the Army approved Hays' dismissal based upon Braue's memo and informed Comtek of its decision.

On July 9, 2009, Hays filed this lawsuit, alleging that Comtek violated the Uniformed Services Employment and Reemployment Rights Act (USERRA) by failing to reemploy Hays after his return from military service and for discriminating against Hays based on his military service.

## II. DISCUSSION[2]

### A. Summary Judgment Standard

"Summary judgement is proper when, viewing the record in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Cross v. Prairie Meadows Racetrack & Casino, Inc., 615 F.3d 977, 980-81 (8th Cir. 2010) (citing Roeben v. BG Excelsior Ltd. P'ship, 545 F.3d 639, 642 (8th Cir. 2008). A plaintiff must substantiate his allegations with enough probative evidence to support a finding in his favor to survive summary judgment. Id. at 981.[3]

---

[2] Both parties assert that this case presents no genuine issue of material fact as to the communications conveyed and understood. Thus, the Court analyzes the arguments accordingly, recognizing that summary judgment must only be granted if a moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

[3] The current posture of this case makes a further discussion of the familiar substantive law of summary judgment unnecessary.

**B. USERRA Reemployment Protection**

**1. Notice**

Comtek argues that Hays failed to properly notify Comtek of the dates of his military service and thus does not qualify for USERRA protection. Comtek avers that Hays' notice given to Comtek is completely memorialized in emails and faxes that show, at best, that Comtek had notice that his military service began January 30, 2008. Hays counters that his written and telephonic communication with Smith establish that Comtek knew that his military service began on January 8, 2008.

A person claiming reemployment rights under USERRA must comply with USERRA's advance notice requirement. Sutton v. City of Chesapeake, ___ F. Supp. 2d ___, No. 2:09cv240, 2010 WL 1994844, at *3 (E.D. Va. Feb. 17, 2010). The USERRA advance notice requirement provides as follows:

> [A]ny person whose absence from a position of employment is necessitated by reason of service in the uniformed services shall be entitled to the reemployment rights and benefits and other employment benefits of this chapter if – (1) the person (or an appropriate officer of the uniformed service in which such service is performed) has given advance written or verbal notice of such service to such person's employer.

30 U.S.C. § 4312(a)(1). The parties argue a significantly different level of specificity for this notice but provide no authority determining whether exact dates of military service are required to satisfy USERRA. Although not conclusive as to Congressional intent, the statute's use of "such service" implies that the notice should indicate a specific period of military service. See Estate of Farnam v. C.I.R., 583 F.3d 581, 584 (8th Cir. 2009) (noting that courts should look first to the language of the statute to determine legislative intent). When the language of the statute is not clear, the Court may look to legislative history to determine intent. Id. USERRA's legislative history gives some indication of the contours of the notice envisioned by Congress: "An individual who does not indicate in any way that he or she is leaving because of military duty

would no longer be protected . . . , but an individual who leaves for two or more reasons, one of which is for military duty, would continue to be protected." H.R. Rep. No. 103-65(I), at 25 (1993) (citing and contrasting Adams v. Mobile Cty. Pers. Bd., No. 81-0524, 1982 WL 1972 (S.D. Ala. Nov. 24, 1982) (veteran who failed to notify employer that he was leaving employment to enter military service did not waive protection under Veterans' Reemployment Rights Act)). Thus, an employee's notice under USERRA must inform the employer that a reason for the employee's absence from employment is due to military service; and because the statute indicates that notice should be given of a specific period of military service, the start date of military service must be clear.

Given the context of the statute and the need for both the employer and employee to understand the nature and extent of the protection, the Court concludes a reasonably clear notice is required. Accordingly, the Court holds that the date on which the employee's specific period of military service will begin – as clearly indicated in his advance written or verbal notice – determines when USERRA protection is triggered and the extent of that protection.[4] An employee cannot claim USERRA reemployment protection beginning earlier than the date that the company had notice the employee's military service was to begin.

The parties attempt to demonstrate that the record clearly establishes exactly what notice Hays provided and what information such notice conveyed to Comtek. The record includes various fax cover sheets and leave request forms prepared by Hays indicating that Hays was requesting vacation and an unpaid leave of absence. On December 20, 2007, Hays sent Smith a fax request that included an unpaid leave of absence to begin on February 7, 2008, indicating Iraq as his destination with a return to work date of "sometime in April 09." Pl.'s Resp. App. 171 of 186. Also included in the fax was a vacation request, which did not include a destination and had a return to work date of February 5, 2008. On January 3, 2008, Hays faxed Smith a

---

[4] See discussion of 38 U.S.C. § 4312(e)(1)(A), infra at 7-8.

cover sheet on which he wrote, "Unit is putting IDT's (Drill days) in front of AT – so our NLT date moved up a week." Pl.'s Resp. App. 143 of 186. The accompanying leave request form did not indicate whether Hays was requesting vacation time or unpaid leave or Hays' destination but included a begin leave date of "08 Jan 08 - 29 Jan" and a back to work date of "n/a loa." Pl.'s Resp. App. 145 of 186.

Hays' December 20 leave of absence request is the only written communication that refers to Hays' military service and indicates a start date of February 7. Reading the January 3 cover sheet together with Hays' previous correspondence in a light favorable to Hays and construing inferences in Hays' favor, Hays notified Comtek that his military leave was to begin a week before February 7. Thus, the written correspondence does not demonstrate that Hays notified Comtek that his military service was to begin on January 8, 2008.

Hays speculates that Smith understood that the reason for his requested vacation time was for military service either due to conversations Smith had with Hays or because anyone with military experience would have understood that Hays was taking vacation leave for military service because it was a common practice to take vacation leave for military service. Hays points to nothing in the record that shows that Smith and Hays discussed anything material that is not reflected in the written communication on record other than Hays' own assertions that Smith understood that Hays was taking vacation time for military leave.[5] Hays' self-serving

---

[5] Hays testified as follows:

Q. Just one other area then. There's some discussion of vacation time and you taking vacation. Do you recall your testimony on direct examination regarding that subject?

A. Specifically when I was on vacation or –

Q. Correct.

A. Ms. Smith knew I was on vacation. And my understanding was that if Ms. Smith understood it, Mr. Rasmussen would understand it, that I'm taking vacation time while I'm on AT. An I never had any inclination that Mr. Rasmussen did not understand that.

Q. Did you have any communication back and forth with Ms. Smith as to whether or

allegations of Smith's understanding does not give rise to a genuine issue of material fact on a motion for summary judgment. See Seymour v. City of Des Moines, 519 F.3d 790, 801 (8th Cir. 2008) (a mere allegation of inadequate training would not give rise to a genuine dispute of material fact); Klein v. McGowan, 198 F.3d 705, 709 (8th Cir. 1999) ("[M]ere allegations which are not supported with specific facts are not enough to withstand the motion [for summary judgment]."). Moreover, Hays testified that what is memorialized in writing is "pretty much" and "effectively" what he told Smith over the phone, thus the writing should reflect what Smith understood. Def.'s App. 21, Pl.'s Resp. App. 42 of 186. Because what is memorialized in writing does not reflect that Smith understood that Hays' military service was to begin at the time he was taking vacation leave, the record does not establish that Hays gave Comtek notice that his military service began earlier than a week before February 7, 2008.

Based on Hays' notice, Hays' reemployment protection under USERRA began a week before February 7, 2008. Hays returned to his residence from military service on February 9, 2008. Under § 4312(e)(1)(A), Hays was required to report to his employer "not later than the beginning of the first full regularly scheduled work period on the first full calendar day following the completing of the period of service and the expiration of eight hours after a period allowing for the safe transportation of the person from the place of that service to the person's residence" because Hays' period of service was less than thirty-one days. 38 U.S.C. § 4312(e)(1)(A). It is undisputed that Hays did not notify Comtek of his return from military

---

> not you'd used vacation time and/or sick leave time while you were on active duty?
> A. Yes, sir. Somewhere in the latter part of December, first part of January I decided I was going to spend all of my vacation time before starting my leave of absence time. I also asked about sick leave and about holiday pay and my bonus. And Ms. Smith had told me you can't take sick leave in conjunction with vacation. Sick leave is for being sick. So I responded that I understood that and thank you, and I resubmitted – once we discovered at the beginning of January that my report date had been moved forward about a week, I resubmitted and had my vacation time and my leave of absence start date adjusted accordingly.

Pl.'s Resp. App. 52-53 of 186.

service until at least February 12, 2008. Therefore, Hays did not comply with USERRA's reporting requirement and is not "entitled to the reemployment rights and benefits and other employment benefits" under USERRA. 38 U.S.C. § 4312(a).

Because proper notice is essential to a USERRA claim, and Hays did not substantiate his claims with enough probative evidence in the record to show that he gave Comtek proper notice, summary judgment in favor of Comtek is required. See Cross, 615 F.3d at 981.

**2. Affirmative Defense of Impossibility or Unreasonableness**

Assuming *arguendo* that Hays provided notice under USERRA, Comtek argues that it is entitled to summary judgment because it has an affirmative defense under USERRA that precludes Hays' claim. Comtek avers that due to changed circumstances, it would have been impossible or unreasonable to reemploy Hays after his military service because the Army had asked for Hays' removal as an associate professor of military science at ISU, and because Hays was insubordinate. Hays argues that he was terminated prior to the Army approving his removal, and thus Comtek's affirmative defense does not apply.

Section 4312(d)(1) provides that "[a]n employer is not required to reemploy a person under this chapter if the employer's circumstances have so changed as to make such reemployment impossible or unreasonable." 38 U.S.C. § 4312(d)(1). The goal of statutory interpretation is to give effect to the intent of Congress. Estate of Farnam, 583 F.3d at 584. Statutory interpretation begins with the plain language of the statute. See Sierra Club v. Otter Tail Power Co., 615 F.3d 1008, 1014-15, 1018 (8th Cir. 2010) (noting that the court begins its inquiry with the language of the statute and basing its conclusion on the court's interpretation of the plain language of the statute); Estate of Farnam, 583 F.3d at 584 (the first step in giving effect to congressional intent "is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case" (quoting Robinson v. Shell Oil Co., 519 U.S. 337, 340 (1997))). If the Court finds the language of the statute unambiguous, the

Court need not resort to secondary canons of statutory interpretation.[6] Estate of Farnham, 583 F.3d at 584.

In interpreting the plain language of the statute, the issue is whether it would be unreasonable under USERRA to require reemployment of an employee who had been fired for cause based on actions taken before reemployment. The answer must be yes. "In determining whether statutory language is plain and unambiguous, the court must read all parts of the statute together and give full effect to each part." Id. Section 4312(d)(1) creates an affirmative defense for employers so that § 4312(a) cannot act as an absolute guarantee of reemployment, counterbalancing the protection of military service-men and women with the reality of changing business needs and employee/employer relationships that would make reemployment unreasonable. USERRA does not give a person on military leave carte blanch to violate a company's trust while on leave by guaranteeing reemployment. Under the plain language of the statute, it would be unreasonable to require a company to reemploy a person under USERRA if that person had divulged company secrets or sexually harassed a co-worker while on military leave. Similarly, § 4312(d)(1) does not allow an employee to engage in insubordinate behavior that would be cause for dismissal at any other time.

Moreover, contrary to Hays' assertions that Comtek should have rehired Hays even if it intended to immediately fire him, rehiring and immediately firing such an employee would be an

---

[6] The parties cite USERRA's legislative history as evidence of congressional intent; however, the Court only examines legislative history if the statute is ambiguous. See Estate of Farnham, 583 F.3d at 584. Legislative history provides that the exception of unreasonableness or impossibility "is only applicable 'where reinstatement would require creation of a useless job or where there has been a reduction in the work force that reasonably would have included the veteran.'" H.R. Rep. 103-65(I), at 25 (1993) (quoting Davis v. Halifax Cty. Sch. Sys., 508 F. Supp. 966, 968 (E.D. N.C. 1981)). Even following the language found in the legislative history, it is plausible that firing a veteran/employee for cause would be a reduction in the work force that reasonably would have included the veteran.

unnecessary formality based on the provision in § 4312(d)(1) that allows an employer to avoid automatically reemploying a person returning from military service.

Comtek cites Madden v. Rolls-Royce Corp., No. 1:06-cv-0584, 2008 WL 747290 (S.D. Ind. Mar. 18, 2008), as factually analogous to the instant case, asserting that it stands for the proposition that a staffing agency does not have to reemploy a returning military service-member if the company with which the staffing agency has contracted made the decision to terminate the service-member's employment. Hays argues that Madden is distinguishable and not applicable in this case.

In Madden, a staffing agency placed an Air Force reservist with Rolls-Royce. Id. at *5. At about the time the reservist was leaving for military duty, Rolls-Royce decided to terminate the reservist based on work deficiencies. Id. at *6. Rolls-Royce did not inform the reservist of the deficiencies before he left, and the reservist was informed that he had been laid off due to cutbacks. Id. In analyzing the reservist's USERRA claim, the court stated,

> there is no question that in July 2003, assuming [the reservist] made an inquiry of [the staffing agency] about reinstatement at Rolls-Royce at that time, Rolls-Royce was not accepting placements from [the staffing agency] because the [staffing agency]/Rolls Agreement was set to expire. As a result, [the reservist]'s reemployment at Rolls-Royce through [the staffing agency] was impossible or unreasonable at that point in time, which is enough to insulate [the staffing agency] from liability under USERRA.

Id. at *13 (citing 38 U.S.C. § 4312(d)(1)(A)). The staffing agency also attempted to find other positions for the reservist. Id.

Hays argues that Madden is distinguishable because (1) Hays was a full-time employee, whereas the reservist was temporary; (2) the Army's decision to terminate Hays' position was not made until after Comtek fired Hays, while Rolls-Royce decided to fire the reservist before he left for military service; and (3) Comtek had the authority to determine Hays' employment,

whereas Rolls-Royce, rather than the staffing agency, had that authority. Such distinctions, however, are immaterial. The temporary employee status of the reservist only affected the court's analysis of the reservist's claims against Rolls-Royce but did not change the analysis of the claims against the staffing agency, and the Court finds the analysis regarding the staffing agency more relevant to this case as highlighted in the language excerpted above. Additionally, while final Army approval to terminate Hays' position was not given until after Comtek fired Hays, Hays' direct Army supervisor had already decided that Hays should not be employed at ISU and had initiated the bureaucratic process to get approval for his decision. Finally, the record does not show whether Comtek had the authority to employ Hays in a position to which the Army objected.

More important than factual distinctions, however, is Madden's holding that changed circumstances can render reemployment unreasonable, which is instructive since Madden says nothing about useless job creation or reductions in the work force.[7] Here, the changed circumstance was that Comtek found that Hays was insubordinate, and Comtek decided that the employer/employee relationship was thus irreparably broken. Like Madden, that change in circumstance was enough to make Hays' reemployment unreasonable. Cf. Bacon v. Hennepin Cty. Med. Ctr., 550 F.3d 711, 715 (8th Cir. 2008) ("[A]n employer who interferes with an employee's FMLA rights [such as termination] will not be liable if the employer can prove it would have made the same decision had the employee not exercised the employee's FMLA rights."); Throneberry v. McGehee Desha Cty. Hosp., 403 F.3d 972, 980 (8th Cir. 2005) (same).

---

[7] See supra note 6. The reduction of the work force in Madden was a reduction of one person – the reservist. Madden highlights that Rolls-Royce experienced a reduction in the work load, which, along with the reservist's deficiencies, caused Rolls-Royce to terminate the reservist's position.

### C. USERRA Discrimination Protection

#### 1. USERRA Motivating Factor Requirement

Comtek argues that Hays' cannot establish a claim for discrimination under USERRA. USERRA provides,

> An employer shall be considered to have engaged in actions prohibited –
> (1) under subsection (a), if the person's membership, application for membership, service, application for service, or obligation for service in the uniformed services is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such membership, application for membership, service, application for service, or obligation for service.

38 U.S.C. § 4311(c)(1). "Section 4311 applies after reemployment has occurred and 'prohibits discrimination with respect to any benefit of employment against persons who serve in the armed services after they return from a deployment and are reemployed.'" Clegg v. Ark. Dep't of Corr., 496 F.3d 922, 930 (8th Cir. 2007) (quoting Francis v. Booz, Allen & Hamilton, Inc., 452 F.3d 299, 304 (4th Cir. 2006) (noting that § 4312 protects military members up to the instant of reemployment while other sections of USERRA, such as § 4311 and § 4316, protect the member after reemployment occurs)). Thus, Hays can only assert a claim under § 4311 by first showing that he was entitled to reemployment under § 4312. Because Hays was not reemployed nor was he entitled to reemployment under §4312, he may not assert a discrimination claim under § 4311, and Comtek is entitled to summary judgment.

Even if Hays could assert a discrimination claim under § 4311, Hays cannot show that Comtek had a discriminatory motive for firing Hays. Because USERRA does not require that the employer's motivation be established by direct evidence, Hays may establish Comtek's discriminatory motivation by circumstantial evidence. See Desert Palace, Inc. v. Costa, 539 U.S.

90, 99-100 (2003) (noting the "utility of circumstantial evidence in discrimination cases"). There is no dispute that direct evidence of discriminatory intent does not exist; therefore, Hays argues that the Court should apply the following factors to infer discriminatory intent:

> proximity in time between the employee's military activity and the adverse employment action, inconsistencies between the proffered reason and other actions of the employer, an employer's expressed hostility towards members protected by the statute together with knowledge of the employee's military activity, and disparate treatment of certain employees compared to other employees with similar work records or offenses.

Sheehan v. Dep't of Navy, 240 F.3d 1009, 1014 (Fed. Cir. 2001).

Here, the only factor that favors Hays is the temporal proximity between Hays' military service and adverse employment action. Comtek's proffered reason for firing Hays for non-compliance with USERRA is not inconsistent with the notice Hays provided, and the record does not reveal that Comtek expressed any hostility toward those serving in the military; indeed, Comtek is in the business of employing those who have served in the military. Hays also advances the argument that Comtek hired an unqualified applicant to fill Hays' former position. However, such an argument is flawed because it is based only on Hay's own testimony, see Younts v. Fremont Cty., 370 F.3d 748, 753 (8th Cir. 2004) (conclusory allegations in support an Equal Pay Act claim insufficient to create a genuine issue of material fact), and even if true does not show that Comtek treated employees similar to Hays disparately – which would support an inference of discriminatory motive. Sheehan states that the employer's explanation for the action may be taken into account in determining whether the employee has proven that his protected status was part of the motivation for discriminatory action. Sheehan, 240 F.3d at 1014. Comtek's explanation for firing Hays and Comtek's replacement of Hays with other military personnel comport with a finding that Comtek did not demonstrate a discriminatory motive when

it fired Hays. Therefore, Hays' discrimination claim under USERRA fails because Hays cannot establish the essential motivating factor element of such a claim. 38 U.S.C. § 4311(c)(1).

**2. Burden-Shifting**

USERRA directs an analysis similar to the McDonnell Douglas burden shifting framework, McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), except that under USERRA the burden shifted is the burden of persuasion rather than just the burden of going forward. Thus, under USERRA if Hays shows that his military service was a motivating factor in his dismissal, then Comtek must prove that it would have dismissed Hays regardless of his military service. 38 U.S.C. § 4311(c)(1).

Hays argues that insubordination was only an after-thought in the termination letter, and the argument between Hays and Rasmussen is not sufficient to support firing Hays for insubordination. Comtek counters that Hays' insubordination was a valid reason to fire Hays for cause.

Contrary to Hays' argument, the termination letter does not indicate that insubordination was an after-thought. A Court does not sit as a super-personnel department to oversee a company's employment practices. Gilbert v. Des Moines Area Cmty. Coll., 495 F.3d 906, 916 (8th Cir. 2007); Amendola v. Mayo Found. for Med. Educ. & Research, Nos. 08-6231, 08-6232, 2010 WL 1286087, at *4 (D. Minn. Mar. 29. 2010). Similar to the consideration in Amendola, the Court has no reason to doubt that Hays felt genuinely aggrieved about the phone call with Rasmussen, but the employee handbook provides a basis upon which Comtek could terminate Hays for unprofessional, abusive remarks and insubordination, thus precluding a remedy in federal court. See Amendola, 2010 WL 1286087, at *4 ("The Court has no reason to doubt that the individual plaintiffs in these cases feel genuinely aggrieved. It would be unfortunate if

counsel, motivated by an erroneous understanding of the applicable law, led them to believe that there was a remedy in federal court for their grievances when there is not.”).

Based on the current record, the Court has no reason to doubt that Comtek would have fired Hays regardless of his military service, which is fatal to Hays’ discrimination claim.

## III. CONCLUSION

Based on the foregoing, Plaintiff Nathan Hays’ Motion for Summary Judgment (Clerk’s No. 26) must be **denied**; Communication Technologies, Inc.’s Motion for Summary Judgment (Clerk’s No. 27) must be **granted**; and all of Hays’ claims against Comtek are **dismissed**.

**IT IS SO ORDERED.**

Dated this 26th day of October, 2010.

JAMES E. GRITZNER, JUDGE
UNITED STATES DISTRICT COURT